# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 29, 2014 Session

## RICHARD W. GIBBS ET AL. v. CLINT GILLELAND ET AL.

**Appeal from the Circuit Court for Rutherford County**
No. 66580     Ben H. Cantrell, Senior Judge

_____

**No. M2014-00275-COA-R3-CV - Filed August 13, 2014**

_____

Plaintiffs brought this action against Rutherford County when the county prohibited them from building a home on undeveloped property because the property was below the Base Flood Elevation requirements established by the county. Plaintiffs contend the county had an affirmative duty under Article XIX, Section 19, of the Rutherford County Zoning Resolution to notify them, prior to their purchase of the property, that the property was below the Base Flood Elevation requirements, and the county breached that duty. In response to the complaint, the county filed a motion to dismiss for failure to state a claim based on the immunity provisions under the Tennessee Governmental Tort Liability Act, specifically Tennessee Code Annotated § 29-20-205(1), (3)-(4). The trial court granted the county's motion to dismiss for failure to state a claim based on governmental immunity. Having determined that the county's alleged acts or omissions were discretionary, not operational, the county has immunity; thus, we affirm the dismissal of this action.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Loyd Gilbert Anglin, Murfreesboro, Tennessee, for the appellants, Richard W. Gibbs and Kathryn S. Gibbs.

Josh A. McCreary, Murfreesboro, Tennessee, for the appellees, Clint Gilleland, Kim Gilleland, Rutherford County, Rutherford County Planning and Engineering Department, and Rutherford County Regional Planning Commission.

# OPINION

Richard and Kathryn Gibbs ("Plaintiffs") bought undeveloped real estate in Rutherford County, Tennessee, on April 20, 2012, from Clint and Kim Gilleland, upon which Plaintiffs wanted to construct a home. Over the next ten months, Plaintiffs developed building and site plans for their new property. In February 2013, Mike Parker, Plaintiffs' contractor, obtained a Zoning Compliance Certificate from the Rutherford County Regional Planning Commission and a building permit from the Rutherford County Building and Codes Department. Mr. Parker started construction on the property immediately after obtaining both the certificate and permit.

A week after construction commenced, the Director of the Rutherford County Building Codes Department, David Jones, sent an email to Mr. Parker notifying him of the property's Base Flood Elevation ("BFE") requirements as set by Rutherford County, and that Plaintiffs' property was substantially below the required BFE. This was the first time Plaintiffs became aware that the property was below a BFE requirement or located in a floodprone area. Mr. Parker halted construction and hired engineer Robert Warren to determine the modifications needed to comply with the BFE requirements. Mr. Warren determined that the modifications would cost Plaintiffs the same amount as Plaintiffs paid for the property and may subject Plaintiffs to future liability due to the displacement of water onto neighbors' property. Plaintiffs have yet to resume construction on the property.

Soon thereafter, Plaintiffs filed a complaint against Rutherford County, its Planning and Engineering Department and County Regional Planning Commission (collectively "the county") alleging, *inter alia*, that the county knew as early as 2004 that the property was below the BFE, that the county had an affirmative duty to notify Plaintiffs of the property's location before Plaintiffs purchased the property, and that the county breached that duty by failing to notify Plaintiffs prior to purchasing the property.[1] Plaintiffs filed a motion to amend their complaint to specifically allege that the county violated Article XIX, Section 19, of the Rutherford County Zoning Resolution ("the Resolution"), which lists as an "objective" that potential homebuyers are notified that property is located in a floodprone area. Plaintiffs claimed that the county's failure to timely notify them was a breach of the county's duty and that Plaintiffs sustained damages as a result of this breach because they purchased property on which they may not construct their home.

---

[1]Clint and Kim Gilleland, who sold the property to Plaintiffs, were also named as defendants along with Rutherford County. Plaintiffs claims against the Gillelands were not dismissed and are pending in the trial court; thus, because those claims are not at issue in this appeal, they are not addressed in this opinion.

The county responded to the complaint by filing a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim based on the governmental immunity provisions under the Tennessee Governmental Tort Liability Act ("GTLA"), codified at Tennessee Code Annotated § 29-20-205(1), (3)-(4). Immediately thereafter, Plaintiffs filed a motion to amend their complaint to additionally alleged that the county violated Chapter 10, Section 1001, of the Rutherford County Zoning Ordinance, which had been enacted on January 1, 2013, eight months after Plaintiffs purchased the property.[2] The trial court granted the motion to amend.

Following a hearing on December 18, 2013, the trial court granted the county's motion to dismiss the complaint; the order was entered on January 10, 2014. In its order, the trial court stated that Plaintiffs' claims against the county were barred under Tennessee Code Annotated § 29-20-205(1)-(4); the court also directed entry of final judgment as to the county pursuant to Tenn. R. Civ. P. 54.02.

On appeal, Plaintiffs contend the Resolution created an affirmative duty for the county to timely notify them that the property they intended to purchase was below the BFE. They also contend the county's failure to timely notify them of this fact constituted the negligent performance of an operational duty, not a discretionary duty, for which the county does not have immunity under Tennessee Code Annotated § 29-20-205(1). Accordingly, Plaintiffs contend the trial court erred in dismissing their complaint pursuant to a Tenn. R. Civ. P. 12.02(6) motion.

**ANALYSIS**

I. THE RUTHERFORD COUNTY ZONING RESOLUTION

We begin our analysis by reviewing the Resolution to determine whether the enactment of the Resolution created the affirmative operational duties alleged in the complaint.

The rules and principles that we apply to construe statutes are likewise applicable to the construction of zoning resolutions and zoning ordinances. *See Steppach v. Thomas*, 346 S.W.3d 488, 504 (Tenn. Ct. App. 2011); *Loggins v. Lightner*, 897 S.W.2d 698, 702 (Tenn. Ct. App. 1994) (citing *Tenn. Manufactured Hous. Ass'n v. Metro. Gov't*, 798 S.W.2d 254,

---

[2]The Rutherford County Zoning Ordinance referenced in the amendment became effective January 1, 2013. *See* Rutherford County Zoning Ordinance, http://www.rutherfordcountytn.gov/planning/documents/zoning05152014.pdf (last visited Aug. 1, 2014). The Resolution and the Rutherford County Zoning Ordinance are identical. Plaintiffs only referred to the Resolution in their brief; thus, we only refer to the Resolution.

260 (Tenn. Ct. App. 1990). When the language of a zoning resolution is clear, courts will enforce the resolution as written. *See Lions Head Homeowners' Ass'n v. Metro. Bd. of Zoning Appeals*, 968 S.W.2d 296, 301 (Tenn. Ct. App. 1997). Courts construe zoning resolutions as a whole and give their words their natural and ordinary meaning unless the resolution requires otherwise. *Id.* (internal citations omitted). A proper construction of the resolution furthers the resolution's general purposes, but prevents the resolution from being applied to circumstances beyond its scope. *Id.* (internal citations omitted). A resolution or ordinance must also be read "in conjunction with [its] surrounding parts." *See City of Chattanooga v. Davis*, 54 S.W.3d 248, 265 (Tenn. Ct. App. 2001) (quoting *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)). We construe zoning resolutions and ordinances with some deference towards a property owner's right to the free use of his property, and ambiguities in a zoning resolution are resolved in favor of a property owner's unrestricted use of his or her property. *Lions Head*, 968 S.W.2d at 301.

The Resolution's Statutory Authorization section provides that Rutherford County residents are eligible to participate in the National Flood Insurance Program ("NFIP"), which reads as follows: "The Legislature of the State of Tennessee has in Sections 13-7-101 through 13-7-115, Tennessee Code Annotated delegated the responsibility to the county legislative body to adopt floodplain regulations designed to minimize danger to life and property and to allow its citizens to participate in the [NFIP]. . . ." *See* Rutherford County Zoning Resolution § 19.00(A). The stated purpose of the Resolution was to maintain Rutherford County residents' eligibility in the NFIP, to restrict or prohibit uses which result in damaging increases in erosion and flood heights, and to control the alteration of natural floodplains and stream channels that are involved in the accommodation of floodwaters. *See id.* at §19.00(B)-(C). The Resolution also lists eight "Objectives" for its enactment, which includes protecting human life and property, minimizing the expenditure of public funds for costly flood control projects, minimizing the need for rescue and relief efforts associated with flooding and generally undertaken at the expense of the general public, ensuring that potential homebuyers are notified that property is in a floodprone area, and maintaining Rutherford County residents' eligibility for participation in the NFIP. *See id.* at § 19.00(D), entitled "Objectives."

Plaintiffs insist that the Resolution's objective to ensure that potential homebuyers are notified that property is located in a floodprone area established the county's duty to notify Plaintiffs of the property's location prior to Plaintiffs' purchase of the property. Neither the Objectives nor the Resolution as a whole establishes any such duty. The Resolution's introduction makes clear that the county enacted the Resolution for the sole purpose of allowing Rutherford County residents to participate in the NFIP. Moreover, nothing in the Resolution establishes an affirmative duty on the county to give prospective purchasers of property notice that the property is below the BFE standards established solely by the county,

and the issues in this case do not deal with whether Plaintiffs are eligible to participate in the NFIP. The overarching purpose of the Resolution is to comply with the eligibility requirements to allow Rutherford County residents to participate in the NFIP.

The Resolution's other provisions also support our determination that the Resolution was enacted only to maintain Rutherford County residents' eligibility in the NFIP. For example, in the Resolution's Definitions section, the definition of "Map" includes only those maps issued by the Federal Emergency Management Agency ("FEMA"). *See id.* at § 19.01. A "Special Hazard Area" is defined as an area having special flood hazards and identified on a FEMA-issued map. *See id.* Under Section 19.02 of the Resolution, only the areas of special flood hazard established by FEMA are incorporated into the Resolution; the Resolution makes no mention of incorporating the county's floodprone area determinations not issued by FEMA. *See id.* at § 19.02(B). We could continue to reproduce the Resolution in its entirety and state how the Resolution's provisions are related only to the NFIP and FEMA's floodprone area determinations, but the end result is that floodprone area determinations made solely by the county and not reproduced within a FEMA document are not within the scope of the Resolution.

Plaintiffs' complaint fails to establish that the Resolution applies to Plaintiffs and their property. Plaintiffs do not allege that any part of their property is located within a FEMA zone to which the Resolution applies, nor do Plaintiffs allege that they are wrongfully excluded from eligibility in the NFIP. Plaintiffs reliance on the Objectives section to establish that the county had a duty to notify all potential Rutherford County homebuyers of any property subject to flooding fails in light of the Resolution's purpose of maintaining Rutherford County residents' eligibility in the NFIP. We now turn to whether the GTLA's immunity provisions bar Plaintiffs' claims.

## II. TENNESSEE GOVERNMENTAL TORT LIABILITY ACT

The Tennessee legislature enacted the GTLA to codify the general common law rule that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, government or proprietary." Tenn. Code Ann. § 29-20-201(a) (2008). This general grant of immunity is subject to specific statutory waivers of immunity contained within the GTLA, including the removal of a governmental entity's immunity for injuries proximately caused by the negligent acts or omissions of any employee within the scope of his employment. Tenn. Code Ann. § 29-20-205 (2012); *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). The GTLA will reinstate a governmental entity's immunity, however, if the injury arises from the governmental entity's discretionary decision, regardless of whether the discretion is abused.

Tenn. Code Ann. § 29-20-205(1) (2012); *Giggers v. Memphis Hous. Auth.*, 363 S.W.3d 500, 507 (Tenn. 2012). "The rationale behind this 'discretionary function exception' is to prevent courts from questioning decisions of governmental entities that are primarily legislative or administrative." *Giggers*, 363 S.W.3d at 507 (quoting *Limbaugh*, 59 S.W.3d at 85).

We apply the "planning-operational test" to determine whether a governmental entity is entitled to immunity for a discretionary decision. *Id.*; *see also Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (Tenn. 1992). A governmental entity is immune from suit for actions involving "planning or policy-making." *Giggers*, 363 S.W.3d at 507 (quoting *Helton v. Knox Cnty.*, 922 S.W.2d 877, 885 (Tenn. 1996)). When the act is merely "operational," the entity is not immune. *Id.* (quoting *Helton*, 922 S.W.2d at 885).

Our Supreme Court recently analyzed the distinction between a planning decision and an operational one. In *Giggers v. Memphis Housing Authority*, the court explained:

> [A] planning decision usually involves consideration and debate regarding a particular course of action by those charged with formulating plans or policies. *Bowers*, 826 S.W.2d at 431; *see also Helton*, 922 S.W.2d at 885. A planning decision frequently requires a governmental entity to create policies or plans, formulate specifications or schedules, allocate resources, or determine priorities. *Bowers*, 826 S.W.2d at 431. Planning or policy-making decisions are not subject to tort liability, and a review of these decisions requires judicial restraint. *Limbaugh*, 59 S.W.3d at 85.
>
> Operational decisions, however, implement "preexisting laws, regulations, policies, or standards" that are designed to guide the actions of the governmental entity. *Bowers*, 826 S.W.2d at 431. An operational decision requires that the decision-maker act reasonably when implementing preexisting policy. *Limbaugh*, 59 S.W.3d at 85. Unlike a planning or policy-making decision, an operational decision does not involve the formulation of new policy.

*Giggers*, 363 S.W.3d at 507-508.

After reviewing the "planning-operational test" as explained by *Giggers*, we find that the county's decision to refrain from notifying Plaintiffs that the property was located in a floodprone area was a discretionary decision entitled to immunity. *Id.* at 507. The Resolution did not create a duty on the county or require the county to implement any "preexisting laws, regulations, policies, or standards" to inform Plaintiffs that the property was located in a floodprone area. *Id.* Thus, it was discretionary for the county to decide whether to notify

Plaintiffs that the property was located in a floodprone area. Since the GTLA reinstates a governmental entity's immunity for a discretionary decision, Tenn. Code Ann. § 29-20-205(1) (2012), the county was immune from Plaintiffs' suit.

### III. TENN. R. CIV. P.12.02(6)

Plaintiff challenges the propriety of granting the county's Tenn. R. Civ. P.12.02(6) motion to dismiss for failure to state claims upon which relief can be granted. The standards by which Tennessee courts are to assess a Rule 12.02(6) motion to dismiss are well established. "A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). "The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id*. By filing a motion to dismiss the defendant "admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action." *Id*. (citations omitted).

When a complaint is challenged by a Rule 12.02(6) motion, the complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999) (citing *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997)). Making such a determination is a question of law. Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Id*. (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

Based on our assessment of the legal issues presented and the facts alleged in the complaint, we have determined that Plaintiffs can prove no set of facts upon which relief can be granted against the county. Therefore, we affirm the trial court's decision to dismiss all claims against the county.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Plaintiffs.

_____
FRANK G. CLEMENT, JR., JUDGE